## Wambold *versus* Hoover.

1. Where the holder of a judgment, which has been assigned to him as collateral security, fails to re-assign upon payment of the debt, the Statute of Limitations begins to run as against an action for damages resulting from a breach of contract to re-assign, from the time of the payment of the debt.

2. A mere assent to an expression of ownership by another is not sufficient to toll the Statute of Limitations, if the admission does not involve a promise to transfer.

3. Expressions, which lead to no certain conclusion, ought not to go to a jury as evidence of a new promise when it is sought to remove the bar of the Statute of Limitations.

April 24th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas of *Montgomery county :* Of January Term, 1885, No. 413.

Case, by James Z. Wambold against Jacob Hoover, to recover damages claimed to have been sustained by the neglect or refusal of Hoover to reassign to plaintiff a certain judgment. The writ issued November 28th, 1881.

On the trial, before BOYER, P. J., the following facts appeared: In 1873, Wambold was the owner of a certain judgment for $940, against one Weigner, which had been given him in part payment for the purchase of a certain property in Kulpsville, Montgomery county ; on October 28th, 1873, he assigned this judgment to Hoover by an absolute assignment, noted on the record ; Hoover at the same time giving him the following agreement in writing :—

[Wambold *v.* Hoover.]

"Received October 28th, 1873, of James Z. Wambold, an assignment of a judgment given by Jacob Weigner to said Wambold, dated August 27th, 1873, for $940, and entered in Judgment Docket W, page 372, as collateral security, for the sum of four hundred and seventy-one dollars, and when said sum is paid to me I agree to re-assign to said Wambold the said judgment.          (Signed)          JACOB HOOVER.

It was agreed between the parties that a payment by Wambold of a certain judgment for $460, against him, which was a lien on property held by Hoover, should be regarded as a payment under the terms of the above agreement. Subsequently on May 19th, 1875, this judgment for $460, was paid by an execution issued against other property of Wambold.

On November 28th, 1881, Wambold brought this suit against Hoover upon the receipt above mentioned, claiming the amount of the $940 judgment with interest from 1873. To establish a new promise and take the case out of the Statute of Limitations, Wambold testified as follows: "The day before the five years was up, I went down to Hoover about the $940 judgment; went to Hoover and told him that the judgment was pretty near run out and I wanted it transferred to me as it belonged to me: he said, 'It belongs to you.' It was about four o'clock and he said it was too late to go to Norristown; he went into the house and gave me the receipt and said 'I will be over at Norristown about eight o'clock to-morrow morning.' . . . . . He came the next morning and refused to assign it back to me."

The court charged the jury as follows: "Wambold still retained his interest in the judgment, and if it was to continue a lien on the Kulpsville property, there was no necessity for Wambold to allow it to lose its lien. It had only been assigned as collateral security, and although thus assigned Wambold could at any time have caused a scire facias to be issued, and continued its lien against whatever property it bound; and Hoover could not have prevented such use of the judgment, notwithstanding he held it as collateral," and further directed them that the Statute of Limitations was a bar to the action and that they should find for the defendant.

Verdict for defendant and judgment thereon; plaintiff took this writ assigning for error the portion of the charge above quoted and the direction to find for defendant.

*Aaron S. Swartz* and *Louis M. Childs*, for plaintiff in error.—There was a clear acknowledgment of our right to have the control and use of the judgment; of defendant's contract liability to give it to us; and the handing to us of

[Wambold v. Hoover.]

the receipt, during the interview, removes all possible doubt as to what judgment was referred to. This was sufficient to stop the running of the Statute: Patton *v.* Hassinger, 19 P. F. S., 311; Yaw *v.* Kerr, 11 Wright, 333. The defendant became upon the payment of the $460 judgment a trustee of the $940 judgment in trust to hold for the benefit of James Z. Wambold, and to assign upon demand. Against this trust the statute runs only from the notice of the breach: Pennock *v.* Freeman, 1 Watts, 401; Ferris *v.* Henderson, 2 Jones, 49.

*George W. Rogers* (*D. Ogden Rogers*, with him), for defendant in error.—Even if Wambold ever had a claim against Hoover, the right of action arose May 19th, 1875, and this suit was not instituted until November 28th, 1881, which was more than six years after right of action accrued, and no acknowledgment of the debt or promise to pay having been made by Hoover within that time by which the statute would be tolled. A recovery is consequently barred by the Statute of Limitations.

To take a case out of the statute, the acknowledgment of the debt must be clear and unequivocal; otherwise it is not equivalent to a promise to pay: Senseman *v.* Hershman, 1 Norris, 83.

Mr. Justice TRUNKEY delivered the opinion of the court, May 29th, 1885.

Although the learned judge of the Common Pleas incidentally remarked that the plaintiff could have issued process to revive the judgment notwithstanding he had assigned it as collateral security, he instructed the jury that the statute of limitations was a bar to the action and, for that reason, directed a verdict for the defendant. This instruction is the subject for present consideration.

On October 28th, 1873, an absolute assignment was written on the record of the judgment, and on the same day the assignee gave to the assignor a writing showing that he held the assignment as collateral security for the sum of four hundred and seventy-one dollars, and agreed to re-assign the judgment when said sum should be paid. It was paid on May 19th, 1875, and this action was begun on November 28th, 1881. Upon the payment of said debt the defendant ceased to have any interest in the judgment. The plaintiff had written evidence that the assignment was collateral, and he knew, the instant he paid the debt, that the object of the assignment was accomplished. Thereafter he was not only the legal plaintiff in the judgment, but was solely interested, and if in any sense the defendant was a trustee holding for

[Wambold *v.* Hoover.]

his benefit he knew that the re-assignment was not made at the stipulated time.    Having knowledge of the breach of contract, the statute runs from date of the breach.

The plaintiff's testimony, relied on to establish a new promise, is as follows : " The day before the five years was up I went down to Hoover about the $940 judgment.    I went to Hoover and told him the judgment was pretty near run out and I wanted it transferred to me as it belonged to me ; he said, 'It belongs to you.'    It was about four o'clock and he said it was too late to go to Norristown ; he went into the house and gave me the receipt and said, 'I will be over to Norristown about eight o'clock to-morrow morning.'"    On the following day the parties met at Norristown and the defendant refused to re-assign the judgment.

It is clear that the defendant made no new express promise to re-assign.    Though it may be a probable inference from the plaintiff's testimony, that he so promised, it is by no means certain.    He made no response to the request to transfer the judgment, but to the assertion that it belonged to the plaintiff he expressly assented.    He so admitted the assertion of ownership as not to involve a promise to transfer.    The defendant did not owe the plaintiff a debt, the subject matter was a judgment that in fact belonged to the plaintiff, and over which the defendant had no right of control after May 19th, 1875 ; and he has exercised no control thereof since that date.    This action is for recovery of the amount of that judgment as damages resulting from breach of contract to make a formal re-assignment.    What induced the defendant to refuse, is now immaterial.    The parties agreed that the judgment belonged to the plaintiff—they disagreed on other matters.    The testimony justified the remark of the court to the jury, that " to understand fully the merits of the points in controversy, it would be necessary to go back and review the circumstances out of which the transaction concerning the assignment of the $940 judgment arose as best you could, amid the conflicting and confused statements of fact which have been given in evidence.    But in the view of the court this uncertain groping among the recollections of parties and witnesses, dimmed and partially obliterated by time, is not necessary.    It is to avoid the uncertainty which attends investigations of controversies of many years past that there is a Statute of Limitations."

The statute of limitations is regarded as a wise and beneficial law, and therefore whenever it is sought to be removed by proof of a new promise, such promise ought to be proved in a clear and explicit manner.    It is not necessary that the promise should be express; it may be raised by implication from the acknowledgment of the party.    If the expressions be

[Barclay v. Pursley.]

vague, equivocal and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways, they ought not to go to the jury as evidence of a new promise: 2 Greenleaf's Ev. § 440. Yaw v. Kerr, 47 Pa. St., 333, and Patton's Exs. v. Hassinger, 69 Id., 311, cited by the plaintiff, fail to show that a promise should be inferred from such facts as exist in this case. The former was an action to recover the amount of a note, and there was proof of a distinct acknowledgment of the debt and a promise to pay it, made to the plaintiff's son who called on the defendant in relation to the note. In the latter case it was said " that if the evidence prove a recognition of a debt, or of the instrument or circumstances of indebtedness accompanied by a promise to pay, or such an acknowledgment as is consistent with a promise to pay when the statute has not run, either will prevent the bar of the statute in an appropriate case." Also, after referring to the testimony showing an express promise, it was remarked that there was "proof that the parties were face to face when the new promise was made."

Judgment affirmed.